# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

RAGNER TECHNOLOGY CORP. and
TRISTAR PRODUCTS INC.,

            Plaintiffs,

    v.

MICHAEL BERARDI, CHERYL
BERARDI, GREG JANSON,
NATIONAL EXPRESS, INC., and
ESTATE OF EDWARD KELLEY,

            Defendants.

No. 1:15-cv-7752 (NLH/AMD)

**OPINION**

---

**APPEARANCES**:

EDWARD P. BAKOS
NOAM J. KRITZER
BAKOS & KRITZER
147 COLUMBIA TURNPIKE, SUITE 102
FLORHAM PARK, NEW JERSEY 07932
    On behalf of Plaintiffs

THOMAS R. CURTIN
GEORGE C. JONES
GRAHAM CURTIN
4 HEADQUARTERS PLAZA
P.O. BOX 1991
MORRISTOWN, NEW JERSEY 07962-1991
    On behalf of Defendants

**HILLMAN**, District Judge

This Opinion addresses two separate but partially overlapping motions: Defendant National Express, Inc.'s Motion to Dismiss for Failure to State a Claim and Defendants Michael Berardi and Cheryl Berardi's Motion to Dismiss for Lack of

Personal Jurisdiction, Improper Venue, and Failure to State a
Claim.

For the reasons that follow, this Court finds Plaintiffs'
Second Amended Complaint has not sufficiently pleaded that this
Court has personal jurisdiction over Defendant Cheryl Berardi.
The Court is inclined to dismiss Mrs. Berardi as a party
defendant and allow this case to otherwise proceed in the
District of New Jersey.  The Court will allow supplemental
briefing from the parties regarding how this case should proceed
before issuing its final decision.

**I.**

The following facts come from Plaintiffs' April 29, 2016
Second Amended Complaint.[1]  On September 25, 2005, U.S. Patent
No. 6,948,527 ("the '527 patent") entitled "Pressure-Actuated
Linearly Retractable and Extendible Hose" was issued to Gary
Dean Ragner and Robert Daniel deRochemont, Jr.  On June 23,
2009, U.S. Patent No. 7,549,448 ("the '448 patent") entitled
"Linearly Retractable Pressure Hose" was issued to Ragner.
Ragner Technology is the owner and assignee of all rights to the
'527 and '448 patents, subject only to exclusive licenses
granted to Tristar Products.

In May 2011, Ragner Technology was introduced to Greg

---

[1]     This Court has subject matter jurisdiction pursuant to 28
U.S.C. § 1337 and 28 U.S.C. § 1331.

Janson, who appeared to be interested in investing in Ragner Technology or bringing Ragner Technology to the attention of potential investors. Janson was hired as a broker to recruit investors for Ragner Technology's patented produts.

Janson informed Defendants that Ragner Technology was seeking to meet with investors. Janson scheduled a meeting between Ragner Technology and Defendants for August 23, 2011. On August 23, 2011, Ragner, deRochemont, and Margaret Combs, CEO of Ragner Technology, arrived in Jupiter, Florida for the scheduled meeting. At that time, they learned they were at the home of the Berardi Defendants. Also at the meeting was Edward Kelly, CEO of Defendant National Express. Janson and Vince Simonelli, a business broker, were also present at the meeting. The Berardi Defendants were introduced as Kelly's producers for his television commercials.[2]

At the start of the meeting, Ragner Technology made clear it was seeking investors and not licensing opportunities. Prior to disclosing any confidential information, Combs informed the Berardi Defendants and Kelly that non-disclosure agreements had not been prepared because they had been unaware of whom they were meeting with. Nonetheless, Combs insisted on a non-

---

[2] The Second Amended Complaint states the Berardi Defendants own Berardi Productions, a video production company. Berardi Productions has an exclusive agreement to produce television and online advertisements for National Express's Xhose product.

disclosure agreement before commencing the meeting.  The Berardi

Defendants and Kelly verbally agreed to terms of confidentiality

and non-disclosure for the meeting.  They also agreed to execute

written non-disclosure agreements to be sent by Combs following

the meeting.

After the oral agreement, Ragner Technology "disclosed

information relating to Ragner Technology, the scope of its

patents, product specifications, and target market of the

Microhose product."  They further disclosed

> specific engineering diagrams, ideas, materials of
> manufacture, including but not limited to, prior
> iterations of prototype hoses and prototype hoses
> constructed of more than one layer, more than one
> material, at least one fabric layer, various materials
> of manufacture including but not limited to, vinyl,
> nylon, rubber, polyester, and/or polypropylene, at least
> one layer with cord reinforcement including a hose
> wherein the biasing was performed by elastic material
> such as polymers made of thermoplastic polyurethane to
> provide retracting force, manufacture know-how,
> concepts, etc. related to its prototypes of the
> Microhose product.

Ragner Technology also demonstrated one of the patented

prototypes of the Microhose product.  Mr. Berardi was able to

use one of the patented prototypes and saw it expand and

retract.

During the meeting, National Express articulated its

interest in licensing the patented technology and an intent for

the product to be manufactured in Taiwan.  Ragner Technology

reiterated its request was solely for investors, but also

conveyed its hesitancy to use a foreign manufacturer. After
reassuring Ragner Technology of the capabilities of its foreign
manufacturing contact, Kelly requested permission to contact the
foreign manufacturer to address its ability to manufacture the
product using the patented technology, subject to the terms of
the non-disclosure agreement. Ragner Technology agreed to that
limited disclosure. Kelly indicated he would contact the
manufacturer as discussed.

A little over two months later, on November 4, 2011, Mr.
Berardi filed a patent application entitled "Expandable and
contractible hose," which Plaintiffs allege "claim[ed] novel
features of the prototypes of the Microhose product demonstrated
by Ragner Technology at the August 23, 2011 meeting." Mr.
Berardi obtained U.S. Patent No. 8,291,941 ("the '941 patent"),
entitled "Expandable and contractible hose," U.S. Patent No.
8,291,942 ("the '942 patent") entitled "Expandable hose
assembly," and U.S. Patent No. 8,479,776 ("the '776 patent").

Blue Gentian, LLC is the owner of all the rights in the

'941, '942, and '776 patents.  Mr. Berardi is a managing member
of Blue Gentian.  Blue Gentian, in turn, granted National
Express the exclusive right under the '941, '942, and '776
patents to market and sell the expandable hose product.

Plaintiffs filed their initial complaint on May 30, 2014 in
the United States District Court for the Southern District of
Florida.  This was followed by a First Amended Complaint on June
25, 2015.  This matter was then transferred, sua sponte, from
the Southern District of Florida to the District of New Jersey
by the Honorable William P. Dimitrouleas, U.S.D.J. on October
28, 2015.  This case was originally assigned to the Honorable
Kevin McNulty, U.S.D.J. before being reassigned to the
undersigned on December 2, 2016 because of the pendency of
related matters.

Plaintiffs' April 29, 2016 Second Amended Complaint brings
three counts against Defendants: conspiracy to monopolize (in
the alternative, attempt to monopolize) (Count I); common law
fraud (Count II); and breach of contract (Count III).

**II.**

This Court begins by considering the Berardi Defendants'
argument that this Court lacks personal jurisdiction over them.
As this case was transferred from the Southern District of
Florida, the Court first considers any decisions made by that
court with regard to personal jurisdiction.

The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988). This "doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions." Id. at 816. "Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts." Id. "Indeed, the policies supporting the doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." Id.

In its order transferring this case to the District of New Jersey, the Southern District of Florida did not specifically address whether this Court has personal jurisdiction over Defendants. Its order stated, in pertinent part:

> The Court concludes that it would serve the interest of justice for this case to be transferred to the District of New Jersey, as the claims in this action may be affected by, and are intricately related to, several pending actions in the District of New Jersey involving the same set of patents and related patents for expandable and contractible garden hose that are at issue in the instant controversy. Two other related actions filed in the Southern District of Florida have been transferred to the District of New Jersey. It is likely that there could be inconsistent rulings among

the various federal district courts regarding the patents at issue and the conduct by which the patent-holders obtained those patents.

Plaintiffs Ragner Technology Corporation, and Tristar Products, Inc. consent to transfer on the grounds that the District of New Jersey is an appropriate venue pursuant to 28 U.S.C. § 1404(a) and that transfer will serve the interests of justice. Defendant National Express, Inc. consents to the transfer and to jurisdiction for this matter in the District of New Jersey.

Defendants Michael Berardi and Cheryl Berardi do not dispute that transfer pursuant to § 1404(a) would serve the interests of justice; however, they assert that the District of New Jersey does not have personal jurisdiction over both individuals. Plaintiffs acknowledge that Michael Berardi and Cheryl Berardi may attempt to challenge personal jurisdiction in the District of New Jersey. Nonetheless, Plaintiffs are willing to face that potentiality and request that the Court transfer the action to the District of New Jersey pursuant to § 1404(a).

(citations and footnotes omitted).

While the Southern District of Florida did not specifically conclude that venue and personal jurisdiction were proper in the District of New Jersey, "[a]n action can be brought only where the court has personal jurisdiction over defendants, and thus a court does not have authority to transfer a case to a court that lacks personal jurisdiction." Hunt v. Global Incentive & Meeting Mgmt., No. 09-4921, 2010 WL 3740808, at *8 (D.N.J. Sept. 20, 2010) (citing Sunbelt Corp. v. Noble Denton & Assocs., Inc., 5 F.3d 28, 31-33 (3d Cir. 1993)); accord Hoffman v. Blaski, 363 U.S. 335, 344 (1960) ("If when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes

of defendant, it is a district 'where [the action] might have been brought.'  If he does not have that right, independently of the wishes of defendant, it is not a district 'where it might have been brought,' and it is immaterial that the defendant subsequently [makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum]." (alterations in original) (citing Blaski v. Hoffman, 260 F.2d 317, 321 (7th Cir. 1958))); Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991) ("§ 1404(a) does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendants, even if they consent to suit."); Corry v. CFM Majestic, Inc., 16 F. Supp. 2d 660, 663 (E.D. Va. 1998) ("[T]ransfer is possible only if venue and personal jurisdiction are proper in the transferee forum.  And, importantly, these requirements cannot be waived.").

Thus, it might be said that the Southern District of Florida necessarily and implicitly concluded that the District of New Jersey was a proper venue and had personal jurisdiction over all Defendants in determining it was appropriate to transfer the case to the District of New Jersey.[3]  See generally

---

[3]    The Court finds Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988), similar to this case.  The Federal Circuit in Christianson issued an order transferring an appeal to the Seventh Circuit upon concluding it lacked jurisdiction.

<u>Africa v. City of Philadelphia</u>, 158 F.3d 711, 718 (3d Cir. 1998)

("The law of the case doctrine . . . acts to preclude review of

only those legal issues that the court in a prior appeal

actually decided, either expressly <u>or by implication</u> . . . ."

(emphasis added)).  Accordingly, the law of the case at this

time is that jurisdiction is proper in the District of New

Jersey, as implicitly concluded by the Southern District of

Florida.[4]

    "[T]he decision of the transferor court that the suit could

have been brought in the transferee court is the law of the case

_____

486 U.S. at 806.  The Seventh Circuit then concluded the Federal
Circuit's decision on the jurisdictional issue was in error and
transferred the case back.  <u>Id.</u>  The Court found "the Federal
Circuit . . . was the first to decide the jurisdictional issue.
That the Federal Circuit did not explicate its rationale is
irrelevant, for the law of the case turns on whether a court
previously 'decide[d] upon a rule of law' – which the Federal
Circuit necessarily did – not on whether, or how well, it
explained the decision."  <u>Id.</u> at 817.  "Thus, the law of the
case was that the Seventh Circuit had jurisdiction, and it was
the Seventh Circuit, not the Federal Circuit, that departed from
the law of the case."  <u>Id.</u>

[4]    It appears to this Court that the Southern District of
Florida did not undertake a jurisdictional analysis and made no
determination regarding this Court's jurisdiction over this
case.  Nevertheless, this Court finds it must assume the law of
the case to be that this Court has personal jurisdiction over
Defendants.  The Court thus views the Southern District of
Florida's statement that the Berardi Defendants "may attempt to
challenge personal jurisdiction in the District of New Jersey"
and that "Plaintiffs are willing to face that potentiality" as
the Southern District of Florida recognizing that the law of the
case can be contested and the parties could argue clear error
and manifest injustice.

and should not be reconsidered except in unusual circumstances."

Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 168, 170 (3d

Cir. 1982) ("Once the transferor court has decided the issue of

whether the suit 'could have been brought' in the transferee

court, 28 U.S.C. § 1406(a), this ruling becomes the law of the

case.  If the party opposing the transfer believes the decision

is erroneous, it can either seek reconsideration in the

transferor court, or else petition for a writ of mandamus in the

court of appeals of the circuit in which the transferor court is

located.  A disappointed litigant should not be given a second

opportunity to litigate a matter that has been fully considered

by a court of coordinate jurisdiction, absent unusual

circumstances." (citations omitted)).

Importantly, however, "the law-of-the-case doctrine 'merely

expresses the practice of courts generally to refuse to reopen

what has been decided, not a limit to their power.'"

Christianson, 486 U.S. at 817.  "A court has the power to

revisit prior decisions of its own or of a coordinate court in

any circumstance, although as a rule courts should be loath

[sic] to do so in the absence of extraordinary circumstances

such as where the initial decision was 'clearly erroneous and

would work a manifest injustice.'"  Id. (quoting Arizona v.

California, 460 U.S. 605, 618 n.8 (1983)) ("Thus, even when a

[transferor court]'s decision was law of the case, the

[transferee court] did not exceed its power in revisiting the jurisdictional issue, and once it concluded that the prior decision was 'clearly wrong' it was obliged to decline jurisdiction.").

> A district court may reconsider a previous decision that has become law of the case under four circumstances: (1) where the transferor judge becomes unavailable, thereby precluding a party from filing a motion for reconsideration; (2) where new evidence is available; (3) where a supervening change in law occurs; or (4) where the decision was clearly erroneous and would work a manifest injustice.

<u>Alexander v. Frankling Res., Inc.</u>, Nos. 07-848, 07-1309, 2007 WL 2021787, at *2 (D.N.J. July 9, 2007).

Accordingly, given the lack of explanation regarding any finding that this Court has personal jurisdiction over Defendants, this Court visits the issues of personal jurisdiction and venue solely to determine whether the decision was clearly erroneous and would work a manifest injustice.[5]  The Court begins with personal jurisdiction.

Preliminarily, the Court finds the Berardi Defendants did not waive their argument that this Court does not have personal jurisdiction over them.  It is clear that the Berardi Defendants

---

[5]    The first three exceptions clearly do not apply. Defendants were not constrained from challenging the Southern District of Florida's order and seeking either reconsideration or petitioning for a writ of mandamus with the appellate court. There is further no argument that there is new evidence in this case or new law applicable to this issue.

contested personal jurisdiction before the Southern District of Florida. Indeed, in the order transferring this case to the District of New Jersey, the Southern District of Florida acknowledged that "Defendants Michael Berardi and Cheryl Berardi . . . assert that the District of New Jersey does not have personal jurisdiction over both individuals" and that they "may attempt to challenge personal jurisdiction in the District of New Jersey."

This case was transferred to the District of New Jersey on October 28, 2015. On March 21, 2016, Plaintiffs requested the Clerk enter default against Defendants for failing to respond to the amended complaint. In a responsive letter, Defendants indicated their understanding that their fully briefed motion to dismiss before the Southern District of Florida was ripe for adjudication before the District of New Jersey. A docket entry, however, appears to have terminated the motion to dismiss pending before the Southern District of Florida. Nonetheless, the letter further confirmed Defendants still disputed personal jurisdiction and had planned to discuss the issue at the initial conference before the Court, which had been rescheduled. Thus, on March 22, 2016 Magistrate Judge Michael A. Hammer issued an Order allowing Defendants to file any motion to dismiss by April 22, 2016, which specifically referenced Defendants' intention to

challenge personal jurisdiction.[6]  Before the April 22, 2016

deadline, Judge Hammer ordered Plaintiffs to file an amended

complaint by April 29, 2016 "for the limited purpose[] of

asserting personal jurisdiction over Defendants."  Defendants

responded to Plaintiffs' April 29, 2016 Second Amended Complaint

by timely filing their motion to dismiss.

Defendants' May 13, 2016 Motion to Dismiss was timely

filed, resulting in a timely assertion of their argument as to

lack of personal jurisdiction.  Pursuant to Federal Rule of

Civil Procedure 12(h), a party waives a lack of personal

jurisdiction defense by:

> (A)  omitting it from a motion in the circumstances
>      described in Rule 12(g)(2);[7] or
>
> (B)  failing to either:
>
>      (i)  make it by motion under this rule; or
>
>      (ii) include it in a responsive pleading or in
>           an amendment allowed by Rule 15(a)(1) as
>           a matter of course.

The Court is not convinced that Defendants waived such argument

---

[6]     The Court also reinforced that the motion to dismiss
pending before the Southern District of Florida was terminated.
The Court does not find the issue of when the motion to dismiss
that was pending before the Southern District of Florida was
terminated to be relevant to this waiver determination.

[7]     Rule 12(g)(2) provides: "Except as provided in Rule
12(h)(2) or (3), a party that makes a motion under this rule
must not make another motion under this rule raising a defense
or objection that was available to the party but omitted from
its earlier motion."

by not immediately bringing it before the Court. Defendants did not file any earlier motions or substantive filings in the District of New Jersey that this Court finds would result in a waiver of their personal jurisdiction argument. Plaintiffs have further been aware of Defendants' argument that the District of New Jersey lacks personal jurisdiction since the Berardi Defendants raised the issue in the Southern District of Florida.

The Court finds Watwood v. Barber, 70 F.R.D. 1 (N.D. Ga. 1976) analogous to this case. There, a case was transferred from Alabama district court to Georgia. Id. at 3. The plaintiffs argued the defendants waived their right to contest personal jurisdiction in Georgia by not immediately contesting it after the transfer order or prior to the Georgia court deciding the motion to dismiss left pending by the Alabama court. Id. at 8. The Court found the issue was not waived, as the issue was addressed, but rejected, by the Alabama court. Id. The Court concluded that "the discussion before the transferor court of the issue of personal jurisdiction in Georgia should be deemed sufficient to relieve these defendants of any waiver of that defense pursuant to Rule 12(h)(1)." Id.

> A defense of lack of personal jurisdiction was not "then available" to defendants, within the meaning of Rule 12(g), at the time of the hearing on the motion to transfer. It became available only after the transfer to Georgia was accomplished. While better practice would have dictated the submission of a motion for leave to amend the answers or a motion to amend the pending

motions to dismiss in order to raise the newly-available defense, the court cannot find a waiver of that defense upon these facts.  Plaintiffs were on notice of defendants' challenge to this court's personal jurisdiction over them even if the court itself was not let in on the secret until the submission of the instant motion.  While defendants should have made certain that the documentary record reflected the previous raising of the otherwise-waivable defense, the court cannot say that their failure to do so should trigger the Rule 12(h)(1) waiver.

Id.

Like Watwood, the Berardi Defendants preserved their contest to personal jurisdiction in the transferor court, Plaintiffs were on notice of their argument, and the Court discerns no actions taken by the Berardi Defendants that should have convinced Plaintiffs that the Berardi Defendants were abandoning this argument.  Accordingly, the Court finds Defendants' argument for lack of personal jurisdiction has been preserved, and this Court must address it.

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (citing Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002)); Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996) ("[O]nce a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper."

(citing Narco Avionics, Inc. v. Sportsman's Mkt., Inc., 792 F. Supp. 398, 402 (E.D. Pa. 1992))). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Id. (citing Pinker, 292 F.3d at 368).

A defendant is subject to the jurisdiction of a United States District Court if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, 384 F.3d at 96. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." Id.

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

A defendant establishes minimum contacts by "purposefully

avail[ing] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).  This "purposeful availment" requirement ensures that the defendant could reasonably anticipate being haled into court in the forum and is not haled into a forum as a result of "random," "fortuitous," or "attenuated" contacts with the forum state.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Burger King Corp., 471 U.S. at 472, 475.

In determining whether a defendant's contacts with a forum state are sufficient to allow for personal jurisdiction over that party, a court must consider whether such contacts are related to or arise out of the cause of action at issue in the particular case.  A court may exercise specific personal jurisdiction over a defendant where the cause of action is related to or arises out of activities by the defendant that took place within the forum state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).  If the cause of action has no relationship to a defendant's contacts with a forum state, the court may nonetheless exercise general jurisdiction if the defendant has conducted "continuous and systematic" business activity in the forum state.  Id. at 416.

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp., 471 U.S. at 477 (quoting Int'l Shoe, 326 U.S. at 320). Courts "may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" Id. at 476-77 (quoting World-Wide Volkswagen, 444 U.S. at 292). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." Id. at 477. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id.

Plaintiffs' Second Amended Complaint makes the following allegations regarding this Court's personal jurisdiction over the Berardi Defendants:

- "Defendant Michael Berardi (as the sole managing member of Blue Gentian, LLC) directs Blue Gentian, LLC to restrain competition in part in the State of New Jersey by suing competitors claiming infringement and threatening their customers."

- "Mr. and Mrs. Berardi own the video production company Berardi Productions, Inc. . . . Berardi Productions, Inc. has an exclusive agreement to produce at least television and online advertisement for the Xhose product sold by Defendant National Express. Mr. and Mrs. Berardi (the sole officers of Berardi Productions, Inc.) direct Berardi Productions, Inc. to produce anticompetitive Xhose TV commercials for Defendant National Express which air in the State of New Jersey."

- "Defendants Mr. and Mrs. Berardi write, produce, direct, and edit the anticompetitive Xhose TV commercials which air in the State of New Jersey. Defendant Mr. Berardi can be seen in at least one commercial."

- "On or about May 2014, Defendant Michael Berardi met with Keith Mirchandani, the executive officer and president of Defendant Tristar Products at Mr. Mirchandani's home in the State of New Jersey. Defendant Michael Berardi and Mr. Mirchandani discussed various business matters, including at least the potential resolution of patent matters related to ['941, '942, and '776]."

- "[P]ersonal jurisdiction is proper in this Court as to Defendant Cheryl Berardi, because Cheryl Berardi solicits business and does business within the State of New Jersey, including but not limited to directing anticompetitive marketing to competitors and customers in the State of New Jersey. Therefore, the Court has personal jurisdiction over Defendant Cheryl Berardi . . . ."

- "[P]ersonal jurisdiction is proper in this Court as to Defendant Michael Berardi, because Michael Berardi solicits business and conducts business within the State of New Jersey, including but not limited to directing (through Blue Gentian, LLC an entity of which Defendant Berardi is the sole member) restraint of competition in part in the State of New Jersey by suing competitors

claiming infringement and threatening their customers of fraudulently obtained ['941, '942, and '776 patents], and directing anticompetitive marketing to competitors and customers in the State of New Jersey."

Nearly all of the allegations asserted in Plaintiffs' Second Amended Complaint regarding Mr. Berardi's contacts with the forum state relate to his contacts in his capacity as a member of Blue Gentian and as an officer of Berardi Productions. Similarly, Mrs. Berardi's contacts with the forum state relate to her contacts in her capacity as an officer of Berardi Productions. Accordingly, this Court turns to whether it is proper for the Court to consider the Berardi Defendants' contacts with the forum state while acting on behalf of either Blue Gentian or Berardi Productions.

"As a general rule, an individual whose contacts with the forum state are in his corporate capacity does not thereby become subject to jurisdiction in his individual capacity." Collins v. James W. Turner Constr., Ltd., No. 16-2877, 2017 WL 210236, at *8 (D.N.J. Jan. 18, 2017) (quoting Nicholas v. Saul Stone & Co. LLC, No. 97-860, 1998 WL 34111036 (D.N.J. June 30, 1998)). In Educational Testing Service v. Katzman, 631 F. Supp. 550 (D.N.J. 1986),[8] the court surveyed significant case law that

---

[8]     The Third Circuit, in remanding a case back to the district court, directed the district court's attention to Educational Testing Service, stating "on remand the District Court may address the question of whether the individual defendants . . . are not subject to personal jurisdiction because the relevant

had developed in the Eastern District of Pennsylvania throughout the late 1970s and early 1980s regarding personal jurisdiction over a corporate officer acting in his corporate capacity. Id. at 557; see Acteon, Inc. v. Vista Dental Prods., No. 05-3847, 2006 WL 1207999, at *3-4 (D.N.J. May 3, 2006) (stating that "[w]hether 'a defendant's contacts with the forum state made in his corporate capacity [may] be considered' in the personal jurisdiction analysis was thoroughly examined in Educational Testing Services v. Katzman" and finding "the Katzman holding is consistent with earlier Third Circuit precedent").

Noting that "this issue has not received as much attention by district courts applying New Jersey law," the Katzman court also surveyed a small number of New Jersey state court decisions that addressed this topic. 631 F. Supp. at 558. "After a careful examination of these cases, particularly in light of the recent pronouncements on personal jurisdiction of the Supreme Court," the court found as follows:

> [T]he emerging doctrine in this area appears to be that actions taken within the forum state by a corporate official in his official capacity may be considered for purposes of establishing jurisdiction over him in his individual capacity. However, actions taken by an individual in his corporate capacity outside the forum state are not necessarily enough to establish jurisdiction over the individual.

---

contacts were established in their roles as corporate officers." Wellness Publ'g v. Barefoot, 128 F. App'x 266, 269 n.2 (3d Cir. 2005).

Id. at 559. "[A]ctions taken by a defendant in his or her 'corporate capacity' may only be used to establish personal jurisdiction over the defendant where those actions tend to establish individual liability." Collins, 2017 WL 210236, at *8; accord Payer v. Berrones, No. 12-1704, 2013 WL 5758717, at *3 (D.N.J. Oct. 23, 2013) ("[W]hile jurisdiction over an employee does not automatically flow from jurisdiction over the employer, an individual's contacts with the forum, made in a corporate capacity, may be credited in the jurisdictional analysis, where those contacts support individual liability."); Nelligan v. Zaio Corp., No. 10-1408, 2011 WL 1085525, at *7 (D.N.J. Mar. 21, 2011) ("[C]ase law suggests that actions taken by an individual defendant in his 'corporate capacity' may be considered in a personal jurisdiction analysis if the facts alleged support individual liability . . . .").

"[A]ctions taken in the forum by the corporate entity should not be imputed to an individual defendant for purposes of personal jurisdiction unless the plaintiff establishes that the individual defendant himself took the specific action." Norben Import Corp. v. Metro. Plant & Flower Corp., No. 05-54, 2005 WL 1677479, at *5 (D.N.J. July 15, 2005).

The Eastern District of Pennsylvania has stated: "In order to determine whether the corporate officer will be subject to personal jurisdiction, the following factors should be examined:

'the officer's role in the corporate structure, the quality of the officer's contacts, and the extent and nature of the officer's participation in the alleged tortious conduct.'" Elbeco Inc. v. Estrella de Plato, Corp., 989 F. Supp. 669, 676 (E.D. Pa. 1997) (quoting Maleski v. D.P. Realty Tr., 653 A.2d 54 (Pa. Commw. Ct. 1994)). "An analysis of these factors will determine if the defendant's contacts with the forum related to the corporate capacity 'may be considered in deciding if he should be subject to personal jurisdiction in an individual capacity.'" Id. (quoting TJS Brokerage & Co. v. Mahoney, 940 F. Supp. 784, 789 (E.D. Pa. 1996)).

Accordingly, if the Second Amended Complaint sufficiently alleges the Berardi Defendants could be subject to individual liability, this Court will consider actions taken by the Berardi Defendants in their corporate capacity in its personal jurisdiction analysis to the extent those actions were done within the forum state.[9]

The Second Amended Complaint alleges Mr. Berardi, "as the sole managing member of Blue Gentian," "direct[ed] Blue Gentian,

---

[9]     While "[t]he Court of Appeals for the Third Circuit has not decided a case involving the appropriate standard for individual liability under the antitrust laws," In re Mushroom Direct Purchaser Antitrust Litig., No. 06-0620, 2017 WL 895582, at *9 (E.D. Pa. Mar. 6, 2017), district courts in this jurisdiction and in other circuits have found there can be individual liability under antitrust laws.  See id.

LLC to restrain competition in part in the State of New Jersey by suing competitors claiming infringement and threatening their customers." The complaint specifically pinpoints two 2013 law suits filed in the District of New Jersey: dockets 13-481 and 13-7099. The Second Amended Complaint also alleges Mr. Berardi met with Keith Mirchandani, the executive officer and president of Tristar, in his New Jersey home, to discuss resolving various patent matters. This meeting was done in his capacity as Managing Member of Blue Gentian.

As to both Berardi Defendants, the Second Amended Complaint states the Berardi Defendants direct Berardi Productions to produce anticompetitive commercials "which air in the State of New Jersey." It further states the Berardi Defendants "write, produce, direct, and edit" the anticompetitive advertisements that air in New Jersey.

The Court finds the Second Amended Complaint sufficiently supports personal jurisdiction over Mr. Berardi based on his contacts through Blue Gentian. The 13-481 action was filed in the District of New Jersey on October 23, 2012 by Blue Gentian and National Express. The 13-7099 action was filed in the District of New Jersey on November 21, 2013 by Blue Gentian and National Express. The Court finds the filing of these actions constitute the minimum contacts necessary for this Court to assert personal jurisdiction over Mr. Berardi. The Second

Amended Complaint pleads that Mr. Berardi took specific action and directed the filing of these lawsuits in his capacity as managing member. The Court finds that in using New Jersey courts to allegedly conspire or attempt to monopolize a market with fraudulently obtained patents, Mr. Berardi purposefully availed himself of the privilege of conducting activities in the State of New Jersey. Mr. Berardi was invoking the benefits and protections of the District of New Jersey, located in the forum state. If such use was fraudulent or constituted an attempt to monopolize, Mr. Berardi could reasonably expect to be haled into court in the state in which he filed the lawsuits. Combined with the meeting in New Jersey with Mirchandani, the Court finds Mr. Berardi has such minimum contacts to confer personal jurisdiction on this Court.

The Court also finds exercising personal jurisdiction over Mr. Berardi comports with fair play and substantial justice. This Court, and the federal judiciary generally, has a significant interest in adjudicating this case in the District of New Jersey, where several related matters are also being litigated. Hearing this case in this district allows for optimal use of judicial resources and will allow for consistent rulings in these cases. The Court does not find the burden on Mr. Berardi, a resident of Florida, to be overly burdensome.

However, the Court finds the Second Amended Complaint

deficient in terms of supporting personal jurisdiction over Mrs.

Berardi.  Plaintiffs' allegations regarding the Berardi

Productions' advertisements are not specific enough for this

Court to determine whether they are contacts with the forum

state that could support personal jurisdiction.  Stating that

the advertisements "air in the State of New Jersey" does not

tell this Court whether these were national advertisements,

airing in all states including New Jersey, or whether these

advertisements were specifically targeted toward New Jersey

residents and broadcast in New Jersey.  "[N]ational

advertisements not directed at a particular forum, and

advertisements which are not direct solicitations, but rather

merely 'spread knowledge of defendant's facilities among the

general public,' have not been sufficient to establish

jurisdiction."  <u>Seltzer v. I.C. Optics, Ltd.</u>, 339 F. Supp. 2d

601, 612 (D.N.J. 2004).

Even if these advertisements were specifically targeted

toward New Jersey residents and aired only in New Jersey, Mrs.

Berardi's declaration states she "[n]ever made any determination

as to where any such television commercials might be aired" and

"never directed any marketing or advertising related to the

XHOSE, specifically toward, or in the State of New Jersey."  She

further states she "[n]ever directed any marketing or

advertising directed specifically toward, or in, New Jersey,

regarding the Plaintiffs in this action or their customers." This would not constitute "specific action" taken by Mrs. Berardi directed to the forum state. <u>Norben Import Corp.</u>, 2005 WL 1677479, at *5.

As the content disseminated through Berardi Productions is the only contact Mrs. Berardi is alleged to have with the forum state, the Court finds it cannot assert personal jurisdiction over Mrs. Berardi. The Court finds the Southern District of Florida's implicit conclusion that this Court has personal jurisdiction over Mrs. Berardi clearly erroneous. The Court further finds asserting personal jurisdiction over Mrs. Berardi simply to comply with the law of the case would result in manifest injustice. It is fundamentally unfair to require a defendant to litigate a matter in a district in which the defendant lacks sufficient contacts. Further, the Court finds that upon "conclud[ing] that the prior decision was 'clearly erroneous,'" this Court is "oblig[ated] to decline jurisdiction." <u>Christianson</u>, 486 U.S. at 817.

**III.**

Finding this Court has personal jurisdiction over Mr. Berardi, the Court also addresses venue. 28 U.S.C. § 1391(b) provides that venue is proper in:

> (1)   a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2)    a judicial district in which a substantial part of
> the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is
> the subject of the action is situated; or
>
> (3)    if there is no district in which an action may
> otherwise be brought as provided in this section,
> any judicial district in which any defendant is
> subject to the court's personal jurisdiction with
> respect to such action.

According to the Second Amended Complaint, the Berardi Defendants reside in Florida.  Accordingly, § 1391(b)(1) does not provide for venue in the District of New Jersey. § 1391(b)(2) allows for venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

"The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim,' theoretically a more easily demonstrable circumstance than where a 'claim arose.'"  Cottman Transmission Sys. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).  "In assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute."  Id. at 295. "Events or omissions that might have some tangential connection with the dispute in litigation are not enough."  Id. at 294. "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having

no real relationship to the dispute." Id.

The Court finds sufficient allegations in the complaint regarding "events or omissions giving rise to the claim" occurring in New Jersey that it cannot conclude the Southern District of Florida's implicit decision that venue was proper constituted clear error.

Plaintiffs bring three counts in their Second Amended Complaint: (1) conspiracy to monopolize, (2) common law fraud, and (3) breach of contract. The Court focuses on the first Count, as it is what allows this case to proceed in federal court. The Court thus considers the nature of the dispute to be a conspiracy to monopolize or an attempt to monopolize. The law suits brought in the State of New Jersey make up a large part of Plaintiffs' monopolization claim. While there were other significant events occurring in the State of Florida as well, the Court finds there are enough contacts in New Jersey that prevent this Court from concluding that it was clear error to determine venue was proper in the District of New Jersey.[10]

_____

[10] A 1990 amendment to the venue statute "changed pre-existing law to the extent that the earlier version had encouraged an approach that a claim could generally arise in only one venue." Cottman, 36 F.3d at 294. Thus, "the statute no longer requires a court to select the 'best' forum." Id. "Under the amended subsection (2), . . . [courts] are permitted to find venue proper in any number of districts, as long as each of the districts was host to 'a substantial part of the events or omissions giving rise to the claim.'" Desouza v. Blender, No. 93-6706, 1994 WL 105536, at *2 (E.D. Pa. Mar. 28, 1994). "It

At this juncture,[11] the Court finds its options for the disposition of this case to be: (1) transfer of the case to an appropriate district;[12] (2) severance of the case, allowing this

---

does not require a majority of the events to take place here, nor that the challenged forum be the best forum for the lawsuit to be venued." <u>Park Inn Int'l, L.L.C. v. Mody Enters., Inc.</u>, 105 F. Supp. 2d 370, 376 (D.N.J. 2000). <u>But see</u> <u>Cottman</u>, 36 F.3d at 294 ("Although the statute no longer requires a court to select the 'best' forum, the weighing of 'substantial' may at times seem to take on that flavor.'").

[11] On April 15, 2016, Judge Hammer ordered Plaintiffs to file an amended complaint "for the limited purpose[] of asserting personal jurisdiction over Defendants." Plaintiffs' Second Amended Complaint was thus specifically amended to properly plead jurisdiction. The Court finds a third amended complaint would be unlikely to cure any deficiencies and jurisdictional discovery unlikely to result in a different outcome.

[12] This Court has authority to transfer a case, sua sponte, for lack of jurisdiction pursuant to 28 U.S.C. § 1631. 28 U.S.C. § 1631 provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

Pursuant to § 1631, this Court has authority to transfer this case "to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." As the district where this case was originally filed, the

Court to retain jurisdiction over National Express and Mr. Berardi and dismiss Mrs. Berardi; or (3) severance of the case, allowing this Court to retain jurisdiction over National Express and Mr. Berardi and transfer the claims against Mrs. Berardi.

The Court is hesitant to transfer this case, given the related cases currently being litigated in the District of New Jersey. The Court finds judicial resources are best conserved, and consistent decisions will be made, if this case is able to proceed in the District of New Jersey.

As to severing this case and transferring the claims against Mrs. Berardi, the Court is concerned this would result in duplicitous litigation, a waste of judicial resources, and possibly inconsistent decisions, as the claims against Mrs. Berardi are the same as those against the other two defendants.

The Court is inclined therefore to exercise its jurisdiction over National Express and Mr. Berardi and dismiss Mrs. Berardi as a party defendant without prejudice. The Court believes proceeding in this way will allow for optimal use of judicial resources and the most consistency in this case, as well as promote the expeditious resolution of this and related litigation.

The Court invites the parties to submit supplemental

---

Southern District of Florida would be a proper court to hear this matter pursuant to § 1631.

briefing regarding how this case should proceed.[13]  Given the Court's finding that it lacks personal jurisdiction over Mrs. Berardi, the parties are directed to consider the options discussed by the Court and the parties' preference for how to proceed before a final decision on Defendants' motion is rendered.[14]

An appropriate Order will be entered.


Date: __February 7, 2018__          __s/ Noel L. Hillman__
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[13]  Given the Court's finding that there are insufficient contacts with the forum state to support personal jurisdiction over Mrs. Berardi, the Court will decline to address Defendants' other arguments for dismissal of this case pursuant to Federal Rule of Civil Procedure 12(b)(6), argued in Docket No. 74, Docket No. 75, and the parties' supplemental briefing, until the issue of personal jurisdiction is fully resolved.

[14]  If any party finds Mrs. Berardi to be an indispensable party pursuant to Federal Rule of Civil Procedure 19(b), the parties are directed to brief this issue and any related issues as well.